# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JANUARY 21, 2010 Session

## JACQUELINE REDMON v. CITY OF MEMPHIS, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
No. CH-08-2201-2     Arnold Goldin, Chancellor

_____

### No. W2009-01520-COA-R3-CV - Filed February 19, 2010

_____

A City of Memphis employee was terminated after accessing a city-owned database to obtain the telephone number of a police officer who had arrested her husband and calling the officer at his home to inquire about the arrest. Both the City of Memphis Civil Service Commission and the trial court upheld her termination, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Thomas E. Hansom, Leigh H. Thomas, Memphis, Tennessee, for the appellant, Jacqueline Redmon

Bruce McMullen, Imad Abdullah, Tonya Johnson, Memphis, Tennessee, for the appellee, City of Memphis

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Jacqueline Redmon ("Appellant") was hired as a benefits specialist for the City of Memphis (the "City") in December of 2005. In this capacity, she was responsible for maintaining benefits information for City employees and had access to employees' personal information, including social security numbers, addresses, dependent and spouse information, phone numbers, salaries, garnishments, and benefits information. After Appellant's husband was arrested in November of 2007, Appellant accessed the City's Oracle database to obtain the telephone number of the arresting officer, Officer Darnell Gooch, and she called Officer Gooch at his home to inquire about the arrest.

Officer Gooch was upset by Appellant's telephone call as he had recently been the victim of identity theft. Thus, he called the City's benefits office to verify that Appellant worked for the City, and he also met with Appellant's supervisor, Pearl Gibson, regarding the incident. Officer Gooch filed a formal complaint with his supervisors, which was ultimately forwarded to the "security squad[.]"

Following the police department's internal affairs investigation which sustained the allegations against Appellant, Ms. Gibson prepared a disciplinary statement.[1] According to Ms. Gibson, she then met with Appellant to review the police findings. Appellant acknowledged the truth of the facts contained within the police internal affairs report, and she was terminated via a March 12, 2008 letter.

Recognizing that it had failed to conduct a fact-finding hearing, the City issued a letter on March 18, 2008, rescinding Appellant's termination, reinstating her employment, and placing her on administrative leave pending a fact finding hearing. A second letter, also dated March 18, 2008, was sent to Appellant scheduling a hearing for March 24, 2008, and charging her with three violations: PM 38-02; PM 78-04; and PM 66-12.

A fact finding hearing was conducted on March 24, 2008, at which Appellant was afforded an opportunity to speak on her own behalf. According to the City, Appellant admitted to accessing the database to retrieve Officer Gooch's telephone number and to calling him at home regarding her husband's arrest, but she insisted that she had done nothing wrong. In an April 14, 2008 letter, Appellant was terminated for violating the three

---

[1] According to a March 12, 2008 letter, the Memphis Police Internal Affairs report sustained the allegations that Appellant had violated PM 62-12, Employee Conduct, and PM 70-05, Confidentiality of Medical records.

above-mentioned policies.

Appellant appealed her termination to the City's Civil Service Commission (the "Commission"), and a hearing was held on September 5, 2008. At the hearing, Appellant testified that she had acquired Officer Gooch's telephone number through the Oracle database, that she knew she was only to access the database for "job function[s]," and that her telephone call to Officer Gooch had not been work-related. However, she claimed that she had no intention to harm Officer Gooch, and that she had only contacted him "for [her] own safety." She also pointed out that the telephone conversation was polite and that it had lasted only approximately one minute.

On October 2, 2008, the Commission upheld Appellant's termination, unanimously concluding:

> (a) that Ms. Redmon had accessed the Oracle data base to obtain contact information for Officer Gooch, who had recently arrested her husband; (b) that she had used that sensitive information to contact Officer Gooch at his home while he was off duty to discuss her husband's arrest; (c) that her access to the Oracle data base for that purpose was unrelated to her employment duties and for her personal benefit; (d) that the information obtained by her was confidential; (e) that from her previous work experience, as well as from her City job training, she knew, or should have known, the information she was accessing was confidential and not for personal use; and (f) that her actions were unprofessional, in violation of City policy and were potentially harmful to both Officer Gooch and the City.

Appellant filed a "Petition for Writ of Certiorari" in the Shelby County Chancery Court, seeking a review of the Commission's decision. Appellant's petition was heard on June 11, 2009. The chancery court denied Appellant's petition, specifically finding that the Commission had complied with the Uniform Administrative Procedures Act in conducting its deliberations in private, and that the Commission's decision to uphold Appellant's termination Appellant was supported by substantial and material evidence. Appellant timely appealed to this Court.

## II. ISSUES PRESENTED

Appellant asserts that the chancery court erred in upholding the Commission's decision to terminate Appellant, because the Commission's decision was erroneous for the following reasons:

1. It was a violation of constitutional provisions which prejudiced Ms. Redmon's rights;
2. The decision to uphold the termination was made upon unlawful procedure;
3. The decision rested upon no reasonable basis, was arbitrary and capricious, and indicated an abuse of discretion; and
4. The trial court failed to indicate substantial and material evidence in support of its decision.

## III. STANDARD OF REVIEW

In 1988, the General Assembly amended Tennessee Code Annotated section 27-9-114(b)(1) to read, in part, "Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322." *See Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 262 (Tenn. 2009). "In *Davis*, the Supreme Court clarified the application of Tenn. Code Ann. § 4-5-322 to Civil Service Boards not governed by Tenn. Code Ann. § 27-9-114(a)(1)." Tennessee Code Annotated section 27-9-114(a)(1) provides that "[c]ontested case hearings by civil service boards of a county or municipality which affect the employment status of a civil service employee shall be conducted in conformity with the contested case procedures under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, part 3." *Morris v. City of Memphis Civil Serv. Comm'n*, No. W2009-00372-COA-R3-CV, 2009 WL 4547688, at *3 (Tenn. Ct. App. Dec. 7, 2009) (citing *Davis*, 278 S.W.3d at 263). Because the City of Memphis is a home rule jurisdiction, the City of Memphis Civil Service Commission is exempted from subdivision (a)(1)'s requirement that contested case hearings affecting a civil service employee's employment status be conducted in conformity with the UAPA's contested case procedures. *See id.* (citing City of Memphis Ordinance No. 1852); *see also Davis*, 278 S.W.3d at 263. "However, as noted by the Supreme Court, when Tenn. Code Ann. § 27-9-114(a) and (b) are read *in pari materia*, Tenn. Code Ann. § 27-9-114(a)(2) does not affect the applicability of the judicial review standard to the Commission's decisions under Tenn. Code Ann. § 27-9-114(b)." *Morris*, 2009 WL 4547688, at *3 (citing *Davis*, 278 S.W.3d at 263). Thus, our standard of review is that set forth in Tennessee Code Annotated section 4-5-322:

(h)The court may affirm the decision of the agency or remand the case for

further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Our review of the Commission's factual findings is limited by the provisions of Tennessee Code Annotated section 4-5-322; however, our review of matters of law is de novo without a presumption of correctness. *Davis*, 278 S.W.3d at 264 (citing Tenn. R. App. P. 13(d); *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007)).

## IV. DISCUSSION

### A. Open Meetings Act

On appeal, Appellant claims that the Commission "violated State law when it deliberated over Petitioner's appeal in private." As support for this argument, Appellant cites the Tennessee Open Meetings Act, Tennessee Code Annotated section 8-4-101, et seq., which requires that "[a]ll meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee." **Tenn. Code Ann. § 8-4-102(a)**. As relevant to this appeal, the Act defines a "governing body" as "[t]he members of a public body . . . with the authority to make decisions for or recommendations to a public body on policy or administration[.]" **Tenn. Code Ann. § 8-44-102(b)(1)(A)**.

At oral argument before this Court, Appellant contended that when the Commission makes decisions regarding an employee's termination, that it is making "decisions or recommendations to a public body on . . . administration" as contemplated by the statute. We disagree. This Court, in *Hastings v. South Central Human Resource Agency*, 829 S.W.2d 679, 686 (Tenn. Ct. App. 1991), held that the SCHRA's grievance committee was not a "governing body" within the Act's purview because its function was merely to "hear and dispose of personnel complaints in accordance with the policies and procedures formulated by the governing board." Appellant has failed to show, or even argue, that the City of Memphis Civil Service Commission has authority beyond that of the SCHRA's grievance committee. Accordingly, it does not appear to this Court that the Commission should be viewed as a governing body subject to the Act, and thus, we find that the Commission's decision was not made in violation thereof.

Appellant seems to argue in the alternative that the Commission's private deliberations violated the Uniform Administrative Procedures Act ("UAPA"),[2] specifically, Tennessee Code Annotated section 4-5-312(d), which requires hearings before the Civil Service Commission regarding contested cases "be open to public observation pursuant to the provisions of [the Tennessee Open Meetings Act]." **Tenn. Code Ann. § 4-5-312(d)**. As we explained above, because the City of Memphis is a home rule jurisdiction, the Commission is exempted from Tennessee Code Annotated section 27-9-114(a)(1)'s requirement that "contested case hearings by civil service boards . . . be conducted in conformity with contested case procedures under the [UAPA..]" *See* **Tenn. Code Ann. § 27-9-114;** *Davis*, 278 S.W.3d at 263-64. Thus, we find Appellant's argument without merit.

## B. Sufficiency of the Evidence

Next, we address Appellant's arguments concerning the sufficiency of the evidence presented. Specifically, Appellant contends that the Commission "rendered a decision with no reasonable basis, that was arbitrary and capricious, and that indicated an abuse of discretion[,]" and that "the trial court failed to indicate any substantial and material evidence upon which the commission relied to reach its decision in light of the entire record." Appellant suggests that her termination was "completely unreasonable" because she was "very nice and polite" when she called Officer Gooch, and because his "discomfort stemmed not from specifically receiving a call from [Appellant] but that it happened at a time that he was experiencing identity theft." She further points to her "clean work history" with the City and she suggests that utilizing Officer Gooch's telephone number was not a "very serious

---

[2]Tennessee Code Annotated section 4-5-101, et seq.

breach of confidentiality." Appellant alleges that the Commission erroneously assumed that Officer Gooch's telephone number was confidential. She also claims that she was never provided an employee handbook, that she never divulged Officer Gooch's information to anyone, and that Officer Gooch's telephone number "was on the very screen she would see after logging into her Oracle database[.]" She points out that no criminal charges were filed against her, and she further contends that Officer Gooch had received other calls from City employees and that his concern regarding her telephone call stemmed only from his recent identity theft. Based on these allegations, Appellant maintains that her termination was "excessive and unreasonable."

"In reviewing the [Commission's] findings, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence." *Davis*, 278 S.W.3d at 265 (citing Tenn. Code Ann. § 4-5-322(h)(5)(B). "We may reject the [Commission's] decision only if a reasonable person would necessarily reach a different conclusion based on the evidence." *Id.* (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)). We will not reject the Commission's decision merely because the facts could support a different conclusion. *Id.* (citing *Martin*, 78 S.W.3d at 276).

Appellant's termination was based on violations of the following provisions:

PM 38-02(4) - "The employee's conduct and/or behavior toward citizens, public charges, vendors, contractors, management personnel, fellow employees, etc., has been offensive, inappropriate, and fails to maintain satisfactory and harmonious working relationships."

PM 38-02(11) - "The employee has misappropriated City funds, appropriated City property for personal use, illegally disposed of City property, removed or destroyed City records, or has taken, borrowed, or removed City property, regardless of size and/or cost from City premises without proper authorization."

PM 38-02(17) - "The employee has either on or off the employee's regular duty hours engaged in employment, activities, or enterprises that are inconsistent, incompatible, or in legal, technical, or moral conflict with the employee's assigned duties, functions, and responsibilities."

PM 62-12 - "City employees . . . shall adhere to acceptable business principles in matters of personal conduct and behavior and exhibit a high degree of personal integrity. This not only involves respect for the rights and feelings of other City employees, but demands that City employees refrain from any conduct or behavior that is criminal or illegal, or that might be personally harmful to co-workers and City of Memphis Government, or that could be viewed unfavorably by the public at large. Therefore, City employees are expected to behave in a professional manner by conducting themselves in a way that best represents City Government and to exercise appropriate conduct and judgment at all times. . . . Willful, deliberate, or careless misuse of City equipment and/or City property shall not be tolerated. Such abuse will lead to disciplinary action up to and including termination and/or assignment of financial responsibility for loss or damage caused. . . ."

PM 78-04 - "All access to and use of personal computer hardware or software owned by the City, including internet, internal e-mail, and external e-mail, by any City employee . . . will be conducted in an ethical, professional, and lawful manner, exclusively for business purposes in support of City operations, and not for personal use. . . . Users will not access or use these tools in any manner that breaches confidentiality of City business, legal, or other proprietary information[.]"

We reject Appellant's claim that the trial court "failed to indicate any substantial and material evidence upon which the commission relied to reach its decision[.]" The trial court, in finding that the Commission's decision was supported by substantial and material evidence, specifically found that PM78-04 required that access to City-owned computer equipment be used exclusively for business purposes, that Appellant had no legitimate business reason for accessing Officer Gooch's confidential information to inquire about her husband's arrest, and that in doing so Appellant violated City policy. We agree with the trial court's statement that "[w]hether [Appellant's] access and subsequent use of the confidential information was innocent or whether Officer Gooch was concerned as a result of being contacted by [Appellant] is irrelevant to whether [Appellant] violated the City's policy[.]" We further find irrelevant whether or not Appellant revealed Officer Gooch's telephone number to a third party, whether criminal charges were brought against Appellant, or whether she had to access multiple screens within the Oracle database in order to locate his telephone number.

We also reject Appellant's contention that "the record from the Commission hearing is rife with facts in evidence *supporting* the reinstatement of [Appellant]." Appellant's claim that she never received a handbook containing the above-mentioned policies is directly at odds with the evidence presented to the Commission. The record before us contains a "City of Memphis New Employee Orientation Checklist," which Appellant conceded she signed on January 10, 2006, acknowledging receipt of numerous policies and procedures, including PM 62-12 and PM 78-04. Additionally, Appellant failed to substantiate her claim that "Officer Gooch had received other calls from City employees . . . though not specifically about arrests he had made."

As we stated above, at the Commission hearing Appellant testified that she accessed the City-owned Oracle database to obtain Officer Gooch's telephone number for personal, rather than work-related, reasons. The Commission unanimously concluded, and we agree, that City employees have an expectation that their confidential information will be used only for business purposes, and "that the City must demand security and confidentiality of sensitive personnel information and must not permit that information to be used for any personal use, however harmless it may appear, without express permission or authorization." Accordingly, we find that Appellant's termination was supported by substantial and material evidence and that the Commission's decision was not "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." **Tenn. Code Ann. § 4-5-322(h)(4)**.

### C.    *Due Process*

1.    Hearings and Violations Charged

Appellant argues that she was denied due process prior to her termination in that she was initially terminated without a "requisite fact-finding hearing." She also claims that the fact-finding hearing following her reinstatement failed to comply with constitutional requirements because it was merely an attempt to "formalize" her termination, and because she was denied the "right" to "bring a witness" to the hearing. Finally, she contends that her due process rights were somehow violated because the City "continued to vacillate on which policies should be used in supporting [her] termination."

The Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law." The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except "for cause." *Armstrong v. Tenn. Dep't of Veterans Affairs,* 959 S.W.2d 595, 598

(Tenn. Ct. App. 1997) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982)). A state civil servant has a property interest in his or her continued employment. **Tenn. Code Ann. § 8-3-331(a)**. Therefore, minimum due process must be afforded to such employees before actions affecting their property interest become effective.

Prior to the termination of a public employee who may be discharged only for cause, the employee must be given notice and an opportunity to respond to the charges against him. ***Case v. Shelby County Civil Serv. Merit Bd.***, 98 S.W.2d 167, 170 n.1 (Tenn. Ct. App. 2002) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)); *see also* Tenn. Code Ann. § 8-30-331. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." ***Id.*** (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893 (1976)). Tennessee Code Annotated section 8-30-331(b)(5) specifically states that the "predecision discussion . . . shall be informal" and that the employee has the "right to present written statements of witnesses[;]" however, "[a]ttendance and participation by persons other than the manager and the employee shall be at the discretion of the manager[.]" Because the opportunity to call witnesses was discretionary rather than mandatory, Appellant's due process rights were not violated by her supervisor's decision to disallow witnesses at the April 14, 2008 fact-finding hearing.

Furthermore, Appellant's due process arguments overlook the post-termination process afforded to her. When less than a full evidentiary hearing is held prior to termination, a formal post-termination hearing is required. ***Case***, 98 S.W.2d at 173 (citing *Loudermill*, 470 U.S. at 547). This Court has stated that "[t]he pretermination and posttermination procedures are intertwined and must be reviewed together to determine whether due process has been satisfied." ***Id.*** (citing *Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985)). Appellant's termination was reviewed by the Commission in a full evidentiary hearing on September 5, 2008. At this hearing, Appellant was represented by counsel, she testified on her behalf, she was allowed to cross-examine Officer Gooch and her supervisor, Ms. Gibson, and she had the opportunity to call witnesses on her behalf although she apparently chose not to subpoena any witnesses. Examining the pre-and post-termination procedures together, we have determined that Appellant was afforded the required procedural safeguards.

We also reject Appellant's claim that the City's vacillation regarding the policies under which she was charged somehow violated her due process rights. In the initial termination notice of March 12, 2008, Appellant was charged with violating PM 62-12, Employee Conduct, and PM 70-05, Confidentiality of Medical Records. However, on

March 18, 2008, Appellant was reinstated, and she was charged with violating three provisions: PM 38-02, PM 78-04, and PM 66-12. Appellant had six days' notice of the violations charged prior to her fact-finding hearing of March 24, 2008, and it is for these three violations that Appellant was ultimately terminated. Appellant has failed to demonstrate any prejudice she suffered as a result of the City's actions. Accordingly, we find that the City's substitution of charges did not violate Appellant's constitutional rights.

### 2. Void for Vagueness

Finally, on appeal Appellant claims that the three policies upon which her termination was based are unconstitutionally vague. The City contends that Appellant failed to raise the "vagueness" argument in the trial court. However, our review of the trial court transcript reveals that Appellant briefly raised the issue regarding PM 38-02. Nonetheless, we find it unnecessary to address Appellant's argument regarding PM 38-02's alleged "vagueness" as Appellant failed to challenge the two other provisions under which Appellant was terminated, and a violation of either, alone, constituted sufficient grounds for termination.

### V. CONCLUSION

For the aforementioned reasons, the judgment of the trial court upholding the termination is affirmed. Costs of this appeal are taxed to Appellant, Jacqueline Redmon, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

-11-